1  FARHAD NOVIAN (SBN 118129)
   farhad@novianlaw.com
2  ANDREW B. GOODMAN (SBN 267972)
   agoodman@novianlaw.com
3  NOVIAN & NOVIAN, LLP
   1801 Century Park East, Suite 1201
4  Los Angeles, CA 90067
   Telephone: (310) 553-1222
5  Facsimile:  (310) 553-0222

6  Attorneys for plaintiffs GARY ABRAMS, JEFFREY ARAN, STEPHEN
   DEBENEDETTO, and PRESTON ROHNER
7

8                    **UNITED STATES DISTRICT COURT**

9                 **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
10

11 GARY ABRAMS, individually and as
   trustee of the Gary Abrams Living
12 Trust Dated 4/28/2008; JEFFREY
   ARAN, an individual; STEPHEN
13 DEBENEDETTO, an individual; and
   PRESTON ROHNER, an individual
14
              Plaintiffs,
15
       v.
16
   BLACKBURNE AND SONS
17 REALTY CAPITAL CORPORATION,
   a California Corporation; GEORGE
18 BLACKBURNE, III, an individual;
   ANGELICA GARDNER, an
19 individual; ANGELA VANNUCCI, an
   individual; and DOES 1 through 10,
20 inclusive,

21            Defendants.
22

23

   CASE NO.: 2:19-cv-06947-CAS-AS

   **PLAINTIFFS' MOTION TO
   ENFORCE SETTLEMENT
   AGREEMENT**

   **[Notice of Motion, Declaration of
   Andrew B. Goodman, Declaration of
   Farhad Novian, and [Proposed] Order
   filed concurrently]**

   Hearing date: May 15, 2023
   Time: 10:00 a.m.
   Place: Courtroom 8D
   Judge: The Honorable Christina A.
   Snyder

24

25

26

27

28

---

# **TABLE OF CONTENTS**

I.    BACKGROUND.................................................................................1

II.    STATEMENT OF FACTS..............................................................4

    A.    Settlement discussions from December 2, 2022 to December 8, 2022 ........4

    B.    Blackburne reneges on the mutual release, thereby forcing this
Motion .................................................................................8

    C.    Blackburne sends more improper, direct communications to Mr.
Abrams, making it clear that a Court order is necessary to enforce
the agreed-upon mutual releases .................................................9

III.    ARGUMENT ...................................................................12

    A.    Legal standards on enforcement of settlement agreements .......................12

    B.    The parties reached a complete settlement on December 8, 2022,
even if a long-form settlement agreement had yet to be drafted.................14

    C.    The parties objectively manifested agreement on all material terms
of the settlement in a December 8, 2022 email exchange, where they
agreed, through counsel, to mutually release each other (from all
known and unknown claims), with the sole exception of Preston
Rohner's outstanding judgment against Blackburne ................................15

    D.    Blackburne is in breach of the parties' settlement due to his refusal to
release Plaintiffs from any claims ...............................................16

IV.    CONCLUSION ...................................................................17

L.R. 11-6.2 CERTIFICATE OF COMPLIANCE ...................................................19

# TABLE OF AUTHORITIES

Cases

*Adams v. Johns-Manville Corp.*
    876 F.2d 702 (9th Cir. 1989) .......................................................................... 12, 14

*Blix Street Records, Inc. v. Cassidy*
    191 Cal.App.4th 39 (Cal.App. 2010) ........................................................... 12, 14

*Botefur v. City of Eagle Point, Or.*
    7 F.3d 152 (9th Cir. 1993) ...................................................................................... 12

*Callie v. Near*
    829 F.2d 888 (9th Cir. 1987) .......................................................................... 12, 15

*Casey v. Proctor*
    59 Cal.2d 97 (Cal. 1963) ......................................................................................... 16

*Doe v. Luster*
    145 Cal.App.4th 139 (Cal.App. 2006) .............................................................. 11

*Elite Show Servs., Inc. v. Staffpro, Inc.*
    119 Cal.App.4th 263 (Cal.App. 2004) .............................................................. 13

*Facebook, Inc. v. Pac. Nw. Software, Inc.*
    640 F.3d 1034 (9th Cir. 2011) ........................................................................ 13, 14

*Greenwood Motor Lines, Inc. v. River Enterprise*
    Case No. ED CV 15-0566 SJO (JPRx), 2017 WL 11647645 (C.D.
    Cal. May 8, 2017) ...................................................................................................... 14

*Hedging Concepts, Inc. v. First Alliance Mortg. Co.*
    41 Cal.App.4th 1410 (Cal.App. 1996) .............................................................. 13

*Inamed Corp. v. Kuzmak*
    275 F.Supp.2d 1100 (C.D. Cal. 2002) ............................................................... 15

*J&J Sports Prods. v. Chai*
    Case No. 1:09-cv-00450-AWI, 2010 WL 2991479 (E.D. Cal.
    2010) ............................................................................................................................. 12

*Johnson v. City of Atwater*

    Case No. 1:16-cv-1636-AWI-SAB, 2018 WL 4210309 (E.D. Cal.

    Aug. 16, 2018) ............................................................................12

*Lindsay v. Lewandowski*

    139 Cal.App.4th 1618 (Cal.App. 2006) ....................................13

*Martin v. Inland Empire Utilities Agency*

    198 Cal.App.4th 611 (Cal.App. 2011) ..................................1, 11

*Osumi v. Sutton*

    151 Cal.App.4th 1355 (Cal.App. 2007) ....................................13

*Roden v. Bergen Brunswig Corp.*

    107 Cal.App.4th 620 (Cal.App. 2003) ......................................13

*United Commercial Ins. Serv., Inc. v. Paymaster Corp.*

    962 F.2d 853 (9th Cir. 1992) ....................................................13

*Weddington Prods., Inc. v. Flick*

    60 Cal.App.4th 793 (Cal.App. 1998) ........................................12

<u>Statutes</u>

CAL. CIV. CODE, § 1636 ......................................................................13

CAL. CIV. CODE, § 1638 ......................................................................13

CAL. CODE CIV. PROC., § 425.16 ........................................................11

CAL. CODE CIV. PROC., § 904.1 ..........................................................11

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    BACKGROUND

This case has been a contentious dispute between investors Gary Abrams, Jeffrey Aran, Stephen DeBenedetto, and Preston Rohner ("Plaintiffs"), on the one hand, and the servicer of a hard money loan (Blackburne and Sons Realty Capital Corporation), its mercurial owner (George Blackburne, III) (collectively, "Blackburne"), and executives (Angela Vannucci and Angelica Gardner), on the other. The case settled on the courtroom steps, so to speak, less than a week before the December 13, 2022 trial date. At issue in the present Motion to Enforce Settlement Agreement is whether the parties agreed to a general mutual release (that excluded a preexisting judgment in favor of Mr. Rohner against Blackburne in a separate action, but nothing else).

As the Court will recall, Blackburne unsuccessfully attempted to assert a counterclaim in this action against Doe defendants only. ECF No. 36 (counterclaim), ECF No. 44 (January 31, 2020 Order granting Plaintiffs' motion to dismiss). Blackburne re-filed those same claims in Sacramento Superior Court on May 27, 2020 (Case No. 34-2020-00279535). The Sacramento action was fundamentally retaliatory, and solely came into being so that Blackburne could deflect his serious misconduct and play the victim. The only persons Blackburne ever named as Doe defendants in the Sacramento action were the investors who sued him in two lawsuits before this Court: Plaintiffs in this lawsuit, and the plaintiffs in the lawsuit before Judge Carney. Blackburne lost the other case before Judge Carney on summary judgment. *See Martin Strasburger, et al. v. Blackburne & Sons Realty Capital Corporation, et al.*, C.D. Cal. Case No. 2:20-cv-00220-CJC-JC, ECF No. 111 thereto (February 8, 2022 Order Granting Plaintiffs' Motion for Summary Judgment). The investors from the Strasburger matter (including Mr. Aran) have all been dismissed as Doe defendants from the Sacramento action. The only Doe defendant Blackburne actually served with the summons and operative pleadings in the Sacramento action

was Mr. Rohner. Although Mr. Abrams and Mr. DeBenedetto were also named as Doe defendants, they have not been served to this day.

Blackburne's attempt to hold Mr. Rohner liable in the Sacramento action was an epic failure. Mr. Rohner filed an anti-SLAPP motion and it was granted with a detailed and comprehensive ruling on June 22, 2022. Blackburne presented no evidence to show that he had a probability of prevailing on the merits. In a misguided attempt to avoid paying the mandatory attorneys' fees that Mr. Rohner was entitled to as a prevailing party, Blackburne appealed the Order granting Mr. Rohner's anti-SLAPP motion. Blackburne did not oppose Mr. Rohner's motion for attorneys' fees, erroneously believing that the appeal would stay an award of attorneys' fees. It did not. Mr. Rohner not only obtained an award of attorneys' fees on August 23, 2022 (entered on September 6, 2022), but he also obtained a judgment on October 7, 2022 (entered on October 18, 2022) that affirmed this award.

Against this backdrop, the parties were on the verge of going to trial in this matter on December 13, 2022. Mr. Rohner had a judgment against Blackburne and, although Mr. Abrams and Mr. DeBenedetto were not served with the summons and pleadings in the Sacramento action, they were positioned well to prevail on anti-SLAPP motions similar to Mr. Rohner's, if necessary. The parties, through counsel, explored the possibility of settlement beginning with two phone conferences between Plaintiffs' counsel and Blackburne's counsel on December 2, 2022.

Between December 2, 2022 and December 8, 2022, the parties, through counsel, negotiated the material terms of a settlement. The terms are confidential, but the parties agreed on the material terms and the settlement was complete on December 8, 2022, even if it had yet to be reduced to a long-form agreement. *See* ECF No. 259 at p. 2:13-15. Plaintiffs' counsel made it clear that they were looking to be completely done with Blackburne and were hoping that he would voluntarily pay Mr. Rohner's judgment. When Blackburne's counsel represented that the more effective approach would be to address Mr. Rohner's judgment after already

obtaining Blackburne's buy-in to the agreed-upon terms, Plaintiffs' counsel agreed to table the issue of Mr. Rohner's judgment for the time being. This was only because Mr. Rohner was not giving up any rights, as he could still obtain a writ of execution.

The parties, through counsel, agreed on December 8, 2022, in an email exchange, to _mutual_ releases, with a carve-out only for Mr. Rohner's judgment (and with the understanding that Blackburne's counsel would revisit the issue with Blackburne in the coming weeks). Defense counsel did not qualify the scope of the mutual release at any time before December 8, 2022. In fact, in the first draft of the settlement agreement circulated by Blackburne's counsel on December 20, 2022, there was general release language (with a waiver of California Civil Code section 1542). The problem was that Blackburne's counsel initially drafted the language to be unilateral (instead of mutual) and there was no mention of Mr. Rohner's judgment. This was contrary to the parties' December 8, 2022 email exchange memorializing the settlement and a sign of trouble brewing.

At bottom, Blackburne is a sore loser. Blackburne did not want to give up the nuisance value of its outstanding claims in the Sacramento action and does not want to voluntarily pay Mr. Rohner's judgment. The problem is, Blackburne already agreed to give up all its known and unknown claims against Plaintiffs and the only carve-out to the general mutual release was Mr. Rohner's judgment (for which Mr. Rohner now has a writ of execution). Instead of acknowledging the parties' agreement, Blackburne, through counsel at first, attempted to retroactively claim that the release did not include the Sacramento action. Blackburne then increased the hostility level by communicating directly with Mr. Abrams and expressing his "readiness for trial" in the Sacramento action and looming threat of more appeals unless Mr. Rohner did not pursue his judgment.

The present Motion follows the parties' discussion at the February 23, 2023 status conference with the Court. ECF No. 263. The Court can order specific performance and damages if there is a complete settlement, and the terms are

sufficiently definite for the Court to determine the parameters of the agreement and whether a breach has occurred. Both conditions are satisfied here. Therefore, as explained further herein, the Court should grant Plaintiffs' Motion and enforce the material term of the parties' settlement calling for general mutual releases, with the exception of Mr. Rohner's judgment.

## II.    STATEMENT OF FACTS

### A. Settlement discussions from December 2, 2022 to December 8, 2022

On December 2, 2022, Mr. Farhad Novian and Mr. Andrew Goodman discussed the possibility of settlement with Mr. David Chute, counsel for Blackburne. Declaration of Andrew B. Goodman filed concurrently herewith ("Goodman Decl."), ¶ 2; Declaration of Farhad Novian filed concurrently herewith ("Novian Decl."), ¶ 2. Mr. Novian and Mr. Goodman had two phone conversations with Mr. Chute lasting about 40 minutes total. Goodman Decl., ¶ 2; Novian Decl., ¶ 2. The central focus of these calls was to see if the parties could get closer to reaching an agreement on the settlement amount. Goodman Decl., ¶ 2; Novian Decl., ¶ 2.

After filing proposed voir dire questions (ECF Nos. 252, 253) and trial briefs (ECF Nos. 255, 256), and exchanging a final draft of the joint jury instructions, Mr. Chute called Mr. Goodman on December 7, 2022 at 10:00 a.m. to inform him that his clients were agreeable to the settlement amount Plaintiffs last demanded in the second call between counsel on December 2, 2022. Goodman Decl., ¶ 3. Mr. Goodman told Mr. Chute during this approximately 10-minute call that Plaintiffs still wanted to resolve the outstanding issues in the separate defamation matter in Sacramento Superior Court (*George Blackburne, III, et al. v. DOES 1 through 20*, Sacramento Superior Court Case No. 34-2020-00279535) and receive a global mutual release. Goodman Decl., ¶ 3. Namely, Mr. Rohner had an outstanding

judgment against Blackburne[1], Mr. Abrams and Mr. DeBenedetto had not been served with the operative First Amended Complaint (but, if they were served, they would have identical anti-SLAPP motions to Mr. Rohner and would assuredly prevail[2]), and there was still an appeal of the order granting Mr. Rohner's anti-SLAPP motion[3] (Third Appellate District, Case No. C096770), which Plaintiffs and their counsel considered to be frivolous. Goodman Decl., ¶ 3. Accordingly, Mr. Goodman told Mr. Chute that he would need to further confer with Plaintiffs. *Id.*

After conferring with Plaintiffs, Mr. Goodman spoke with Mr. Chute again on December 7, 2022 at around 11:26 a.m. for about five minutes. Goodman Decl., ¶ 4. Mr. Goodman advised Mr. Chute that Plaintiffs felt strongly about resolving everything pending between the parties and achieving a true global, mutual release. *Id.* Mr. Rohner wanted his judgment paid without having to obtain a writ of execution and chase down Blackburne. *Id.* Mr. Rohner also did not want to have to deal with Blackburne's frivolous pending appeal[4] or possibly other frivolous appeals of the order awarding him attorneys' fees[5] or his judgment[6]. Goodman Decl., ¶ 4. Mr. Abrams and Mr. DeBenedetto wanted peace of mind that they would not be served with the First Amended Complaint in the Sacramento action and need to waste money on anti-SLAPP motions and inevitable collection efforts against Blackburne. *Id.* As a result, Mr. Goodman, on behalf of Plaintiffs, made a counter-offer for a slightly higher settlement amount to include the amount of Mr. Rohner's judgment. *Id.* Mr. Chute explained that the insurance carrier would not put up any additional money to pay for Mr. Rohner's judgment in the Sacramento action. *Id.*

---

[1] Goodman Decl., Ex. K.

[2] *See* Goodman Decl., Ex. I.

[3] Goodman Decl., Ex. I.

[4] *See* Goodman Decl., Ex. O.

[5] Goodman Decl., Ex. J.

[6] Goodman Decl., Ex. K.

PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

1   Mr. Chute further explained that the parties could run the risk of blowing up the

2   entire deal if Plaintiffs insisted on asking Blackburne to separately put up the money

3   to pay Mr. Rohner's judgment. *Id.* Mr. Goodman asked Mr. Chute to run the

4   proposal by Mr. Blackburne anyway and recommended that they speak again later

5   that day, once Mr. Novian was finished with a court appearance and Mr. Goodman

6   had the opportunity to confer with him. *Id.*

7   Following their phone conversations the morning of December 7, 2022, Mr.

8   Chute sent Mr. Goodman an email on December 7, 2022 at 12:25 p.m. requesting

9   that he begin drafting a settlement agreement and notify the Courtroom Deputy that a

10   settlement has been reached that the parties are presently documenting. Goodman

11   Decl., ¶ 5, Ex. A. Because Mr. Goodman did not believe the parties had reached an

12   agreement on all material terms at that time (specifically, the settlement amount and

13   whether the mutual release would include Mr. Rohner's judgment in the Sacramento

14   action), he responded to Mr. Chute's email at 12:33 p.m. and simply memorialized

15   the status of the discussions to that point in time. *Id.*

16   When Mr. Novian had completed his court appearance in the afternoon of

17   December 7, 2022, he called Mr. Goodman and they tried calling Mr. Chute

18   together. Goodman Decl., ¶ 6; Novian Decl., ¶ 3. This was at around 2:30 p.m.

19   Goodman Decl., ¶ 6; Novian Decl., ¶ 3. Mr. Goodman and Mr. Novian left Mr.

20   Chute a voicemail. Goodman Decl., ¶ 6; Novian Decl., ¶ 3. Mr. Goodman followed

21   up on the voicemail to Mr. Chute with an email on December 7, 2022 at 6:16 p.m.

22   Goodman Decl., ¶ 6, Ex. A; Novian Decl., ¶ 3. In this email, Mr. Goodman provided

23   Mr. Chute with a detailed summary of the Sacramento matter, the status of

24   Blackburne's appeal of the order granting Mr. Rohner's anti-SLAPP motion, and the

25   reasons why Plaintiffs wanted full mutual releases of all claims, all of which Mr.

26   Goodman had explained earlier that day. Goodman Decl., ¶ 6, Ex. A.

27   Mr. Chute called Mr. Goodman at 9:16 a.m. on December 8, 2022. Goodman

28   Decl., ¶ 7; Novian Decl., ¶ 4. Mr. Goodman conferenced in Mr. Novian and they all

6

spoke for about 15 minutes. *Id.* Mr. Chute informed Mr. Goodman and Mr. Novian that the insurance company rejected Plaintiffs' counter-offer for a higher settlement amount that included Mr. Rohner's judgment in the Sacramento action. *Id.* **However, this was the only point of disagreement (i.e., whether Blackburne would voluntarily contribute to pay Mr. Rohner's judgment and whether Mr. Rohner's judgment would be included in the mutual releases)**. *Id.* (emphasis added). Mr. Novian and Mr. Goodman asked Mr. Chute if he had asked Mr. Blackburne whether he would separately chip in the additional demanded amount related to Mr. Rohner's judgment. *Id.* Mr. Chute said that he had not spoken to Mr. Blackburne because, in his experience with Mr. Blackburne, Mr. Blackburne had a tendency to react emotionally and Mr. Chute believed that asking him to separately chip in the additional demanded amount right now would blow up the entire deal. *Id.* Nonetheless, Mr. Chute offered to speak with Mr. Blackburne again in a few weeks once the parties had circulated a long-form settlement agreement. *Id.* Mr. Chute pitched Mr. Novian and Mr. Goodman on the idea that Mr. Blackburne would be more inclined to voluntarily pay Mr. Rohner's judgment if the parties got his buy-in on what they had agreed upon to date, and had the discussion about Mr. Rohner's judgment later. *Id.* Mr. Novian and Mr. Goodman reiterated that Plaintiffs wanted to be completely done with Blackburne. *Id.* However, because Mr. Rohner already had a judgment against Blackburne and would not be giving up any rights if Blackburne did not voluntarily pay it at that time, Mr. Novian and Mr. Goodman were agreeable to presenting Mr. Chute's proposal to Plaintiffs. *Id.*

Without waiving the attorney-client privilege, Mr. Novian and Mr. Goodman presented Mr. Chute's proposal to Plaintiffs in the late morning/early afternoon of December 8, 2022. Goodman Decl., ¶ 8; Novian Decl., ¶ 5. Plaintiffs were in agreement with the settlement amount not including the amount of Mr. Rohner's judgment at that time, with the understanding that Mr. Chute would circle back with Blackburne in a few weeks and that Mr. Rohner still had the right to collect via writ

of execution. *Id.* In addition, Plaintiffs were in agreement that there would be mutual releases of all known and unknown claims between the parties, including the appeal in the Sacramento action, any outstanding rights to appeal the order awarding Mr. Rohner attorneys' fees and Mr. Rohner's judgment, and the outstanding claims against Mr. Abrams and Mr. DeBenedetto; but that the only carve-out to the general mutual releases would be for Mr. Rohner's judgment. *Id.* Consequently, Mr. Goodman emailed all defense counsel on December 8, 2022 at 1:40 p.m. to memorialize the material terms of the settlement the parties had reached, with the understanding that they would be further documented in a long-form settlement agreement. Goodman Decl., ¶ 8, Ex. A; Novian Decl., ¶ 5. All defense counsel confirmed their agreement in email responses to Mr. Goodman's email of December 8, 2022 at 1:40 p.m. Goodman Decl., ¶ 8, Exs. A-C; Novian Decl., ¶ 5. At no point prior to receiving these confirmations did any of the defense attorneys state that the releases would be anything other than general mutual releases with a carve-out for Mr. Rohner's judgment, nor was that Plaintiffs' counsel's understanding. Goodman Decl., ¶ 8; Novian Decl., ¶ 5.

**B. Blackburne reneges on the mutual release, thereby forcing this Motion**

The first sign of trouble came when Mr. Chute circulated a draft of a long-form settlement agreement on December 20, 2022. Goodman Decl., ¶ 9, Ex. D. The general release language was standard language that Plaintiffs' counsel has seen in California settlement agreements throughout the course of their careers, including the California Civil Code 1542 waiver. Goodman Decl., ¶ 9; Novian Decl., ¶ 6. The problem was that, as drafted, the general release was unilateral; Defendants would not be releasing Plaintiffs from <u>anything</u>, contrary to what the Parties, through counsel, agreed on December 8, 2022 before taking the trial off calendar (i.e., <u>mutual</u> releases). Goodman Decl., ¶ 9, Ex. D; *compare* Goodman Decl., Ex. A (December 8, 2022 email at 1:40 p.m., third bullet point, referencing "mutual releases") and Exs. A-C (confirmation emails from defense counsel on December 8, 2022 between 2:02

p.m. and 2:56 p.m.); Novian Decl., ¶ 6. The draft that Mr. Chute circulated also said nothing about a carve-out of Mr. Rohner's judgment from the mutual releases. *Id.*

After the holidays, on January 9, 2023, Mr. Goodman sent Mr. Chute edits to the long-form settlement agreement that reflected <u>mutual</u> releases of all known and unknown claims, with the exception of Mr. Rohner's judgment. Goodman Decl., ¶ 10, Ex. E. Mr. Chute wrote Mr. Goodman back on January 10, 2023 and denied that the parties' settlement included the Sacramento action. *Id.* Mr. Chute never communicated, verbally or in writing, prior to confirming the mutual general releases in his December 8, 2022 email, that there was any carve-out for the Sacramento action generally (outside of Mr. Rohner's judgment). Goodman Decl., ¶ 10; Novian Decl., ¶ 7. Indeed, Mr. Chute never communicated, verbally or in writing, prior to confirming the mutual general releases in his December 8, 2022 email, that Blackburne was asking for any carve-out <u>at all</u>, nor would Plaintiffs have agreed to it. *Id.* Mr. Chute and Mr. Goodman exchanged some additional emails on January 10, 2023, and Mr. Goodman re-attached the email exchange from December 7 to December 8, 2022 (Goodman Decl., Ex. A). Goodman Decl., ¶ 10, Ex. E. However, because Mr. Chute and Blackburne were reneging on the mutual release, and Mr. Goodman was unsuccessful in getting them to acknowledge the parties' agreement memorialized on December 8, 2022, the Parties noted their disagreements in the February 7, 2023 Joint Statement to the Court (ECF No. 261). Goodman Decl., ¶ 10. Plaintiffs then advised the Court at the February 23, 2023 status conference that they would be filing the present Motion (*see* ECF No. 263). Goodman Decl., ¶ 10.

## C. Blackburne sends more improper, direct communications to Mr. Abrams, making it clear that a Court order is necessary to enforce the agreed-upon mutual releases

Mr. Chute's prediction that Mr. Blackburne would react emotionally to a demand to voluntarily pay Mr. Rohner's judgment was not without merit. Goodman Decl., ¶ 11. On January 31, 2023, Mr. Blackburne sent a direct communication to

Mr. Abrams, enclosing a document entitled "Ready for Trial"[7] that was apparently to be filed in the Sacramento action. Goodman Decl., ¶ 11, Ex. F. Mr. Abrams still has not been served with the pleadings in the Sacramento action[8], and Blackburne's counsel, Mr. Geoffrey Evers, has not been relieved as counsel from the state court action[9] (as opposed to the appeal before the Third Appellate District[10]). Goodman Decl., ¶ 11. Plaintiffs and their counsel interpreted this communication as a threat and a scare tactic to make Plaintiffs believe that Blackburne would never be completely gone, despite the Parties' December 8, 2022 agreement to mutually release each other, with the exception of Mr. Rohner's outstanding judgment. *Id.*

Mr. Blackburne followed up on his January 31, 2023 communication with another direct communication to Mr. Abrams on February 16, 2023. Goodman Decl., ¶ 12, Ex. H. Plaintiffs and their counsel interpreted this email as another bad-faith attempt to negotiate out of paying Mr. Rohner's judgment. Goodman Decl., ¶ 12. By that point, however, Mr. Rohner had already submitted a writ of execution for the Clerk's approval, which was signed on February 17, 2023. Goodman Decl., ¶ 12, Ex. L. In addition, even though Blackburne mutually released Plaintiffs from all known and unknown claims in the December 8, 2022 agreement (memorialized in Goodman Decl., Ex. A), Mr. Blackburne was improperly threatening to file another appeal. Goodman Decl., ¶ 12. Mr. Blackburne could have been referring to either an appeal

---

[7] Query who Blackburne is ready to go to trial *against* in the Sacramento action when the only remaining named Doe defendants, Mr. Abrams and Mr. DeBenedetto, have not been served, there is no trial date (*see* Goodman Decl., Ex. M [the next scheduled hearing is a Case Management Conference on June 2, 2023]), and when presented with the opportunity to present evidence in opposition to Mr. Rohner's anti-SLAPP motion, Blackburne presented none (*see* Goodman Decl., Ex. I ["Second Prong—Probability of Prevailing"]).

[8] *See also* Goodman Decl., Ex. M (reflecting no proof of service of summons of service of the Complaint or First Amended Complaint on Mr. Abrams or Mr. DeBenedetto).

[9] *See generally* Goodman Decl., Ex. M (reflecting no motion to be relieved as counsel from Mr. Evers).

[10] *See* Goodman Decl., Ex. O (December 8, 2022 Order).

10

of the order granting Mr. Rohner's unopposed motion for attorneys' fees (entered on September 6, 2022[11]) or an appeal of Mr. Rohner's judgment (entered on October 18, 2022[12]). Goodman Decl., ¶ 12. In either case, as of the present date, Blackburne has not filed a notice of appeal as to either[13], and more than 180 days have lapsed as to the motion for attorneys' fees [14], such that Blackburne would not be able to file a timely appeal[15]. Goodman Decl., ¶ 12. To the extent that today is arguably the last day to appeal Mr. Rohner's judgment, because Blackburne can no longer appeal the predicate order awarding attorneys' fees, an appeal of the judgment would be, as a practical matter, a nullity[16]. Goodman Decl., ¶ 12. But Plaintiffs and their counsel

---

[11] Goodman Decl., Ex. M at ROA #103.

[12] Goodman Decl., Ex. M at ROA #110.

[13] *See generally* Goodman Decl., Ex. M (and the absence of any notice of appeal on the docket); *see also* Goodman Decl., Ex. N (showing no additional appeals in the search results beyond Blackburne's appeal of the Order granting Mr. Rohner's anti-SLAPP motion (Goodman Decl., Ex. I), Third Appellate District Case No. C096770).

[14] *See generally* Goodman Decl., Ex. M at ROA #103 (September 6, 2022). The 180 days as to the September 6, 2022 Order granting Rohner's unopposed Motion for Attorneys' Fees (Goodman Decl., Ex. J) lapsed as of March 5, 2023.

[15] *See* Cal. Rules of Court, rule 8.104(a)(1)(C) (providing that a notice of appeal must be filed within 180 days after entry of judgment); Cal Rules of Court, rule 8.104(b) ("If a notice of appeal is filed late, the reviewing court must dismiss the appeal.").

[16] An order granting an anti-SLAPP motion is appealable (CAL. CODE CIV. PROC., §§ 425.16(i), 904.1(a)(13)), but two notices of appeal of the order and subsequent judgment may be required if the order and judgment are not filed simultaneously. *See Melbostad v. Fisher*, Cal.App.4th 987, 997 (Cal.App. 2008) (appeal from judgment rendered 11 months after order granting anti-SLAPP dismissal did not "save" an otherwise untimely appeal from an anti-SLAPP order). Moreover, an order granting a motion for attorneys' fees rendered subsequent to a ruling on an anti-SLAPP motion is not within the scope of the statutory provisions for a direct appeal of a ruling on an anti-SLAPP motion, and thus is not immediately appealable pursuant to those statutory provisions. *See Doe v. Luster*, 145 Cal.App.4th 139, 145-50 (Cal.App. 2006); *Martin v. Inland Empire Utilities Agency*, 198 Cal.App.4th 611, 632-33 (Cal.App. 2011). Here, Blackburne filed an appeal as to the Order granting Mr. Rohner's anti-SLAPP motion (Goodman Decl., Ex. I), but can no longer separately appeal the Order granting Mr. Rohner's unopposed motion for attorneys' fees (Goodman Decl., Ex. J). *See* Cal. Rules of Court, rule 8.104(a)(1)(C), (b). In the unlikely event that the Third Appellate District reverses the trial court's detailed and comprehensive Order granting Mr. Rohner's anti-SLAPP motion (in which Blackburne made absolutely no evidentiary showing and did not dispute the evidence supporting prong one of the anti-SLAPP analysis), the Court of Appeal would be powerless to reverse the award of

11

1  would not be surprised to see Blackburne file untimely, frivolous appeals anyway.

2  *Id.*

3  **III.    ARGUMENT**

4  **A. Legal standards on enforcement of settlement agreements**

5  It is well settled that a district court has the equitable power to enforce

6  summarily an agreement to settle a case pending before it. *See, e.g., Callie v. Near*,

7  829 F.2d 888, 890 (9th Cir. 1987). To be enforced, a settlement must (1) be a

8  complete settlement, and (2) the settling parties must have either agreed to the terms

9  of the settlement, or authorized their respective counsel to settle the dispute. *Id.*

10  When the parties intend that an agreement be binding, the fact that a more formal

11  agreement must be prepared and executed does not alter the validity of the

12  agreement. *Johnson v. City of Atwater*, Case No. 1:16-cv-1636-AWI-SAB, 2018 WL

13  4210309, at *3 (E.D. Cal. Aug. 16, 2018) (citing *Blix Street Records, Inc. v. Cassidy*,

14  191 Cal.App.4th 39, 48 (Cal.App. 2010)).

15  The interpretation of a settlement agreement is governed by principles of state

16  contract law. *Botefur v. City of Eagle Point, Or.*, 7 F.3d 152, 156 (9th Cir. 1993). As

17  such, a motion to enforce the settlement agreement is essentially an action to

18  specifically enforce a contract. *Adams v. Johns-Manville Corp.*, 876 F.2d 702, 709

19  (9th Cir. 1989). The Court's enforcement power includes the authority to award

20  damages for failure to comply with the settlement agreement and to entitle the non-

21  breaching party to specific performance. *J&J Sports Prods. v. Chai*, Case No. 1:09-

22  cv-00450-AWI, 2010 WL 2991479, at *1 (E.D. Cal. 2010); *see also Weddington*

23  *Prods., Inc. v. Flick*, 60 Cal.App.4th 793, 816 (Cal.App. 1998) (noting that specific

24  enforcement is appropriate where the "[contract] terms are sufficiently certain to

25

26  ───────────────

attorneys' fees to Mr. Rohner as the prevailing party. An appeal of the judgment,

27  without an accompanying ruling that the attorneys' fees were improperly awarded, would be entirely frivolous. As it stands, the appeal of just the Order granting Mr.

28  Rohner's anti-SLAPP motion is arguably frivolous and solely intended to cause delay (although it has not impeded Mr. Rohner from obtaining a writ of execution).

make the precise act which is to be done clearly ascertainable.") (internal quotation marks and alterations omitted).

Under California law, the intent of the parties determines the meaning of the contract. *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992). The relevant intent is "objective"—that is, the intent manifested in the agreement and by surrounding conduct—rather than the subjective beliefs of the parties. *Id.* (citing CAL. CIV. CODE, §§ 1636, 1638). California has a strong policy in favor of enforcing settlement agreements. *Osumi v. Sutton*, 151 Cal.App.4th 1355, 1357 (Cal.App. 2007). A settlement agreement must be interpreted to give effect to the mutual intentions of the parties as they existed at the time of contracting. *Roden v. Bergen Brunswig Corp.*, 107 Cal.App.4th 620, 625 (Cal.App. 2003); CAL. CIV. CODE, § 1636. Courts will not set aside contracts for mere subjective misinterpretation. *Hedging Concepts, Inc. v. First Alliance Mortg. Co.*, 41 Cal.App.4th 1410, 1421 (Cal.App. 1996). A settlement agreement, like any other contract, is unenforceable if the parties fail to agree on a material term or if a material term is not reasonably certain. *Lindsay v. Lewandowski*, 139 Cal.App.4th 1618, 1622 (Cal.App. 2006). However, the Court may fill in missing terms by reference to the rest of the contract, extrinsic evidence, and industry practice. *See Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1038 (9th Cir. 2011) (citations omitted).

To form an enforceable agreement, the parties must (1) intend to be bound, and (2) agree on the material terms. *See Elite Show Servs., Inc. v. Staffpro, Inc.*, 119 Cal.App.4th 263, 268 (Cal.App. 2004) ("Under California law, a contract is enforceable if it is sufficiently definite that a court can ascertain the parties' obligations thereunder and determine whether those obligations have been performed or breached.") A term may be "material" in one of two ways: It may be a necessary term, without which there can be no contract; or, it may be an important term that affects the value of the bargain. *Facebook, Inc.*, 640 F.3d at 1037. While omission of

13

1  the former would render the contract a nullity, a contract that omits terms of the

2  latter type is enforceable under California law, so long as the terms it <u>does</u> include

3  are sufficiently definite for a court to determine whether a breach has occurred, order

4  specific performance, and/or award damages. *Id.* (internal citation omitted).

5  In addition, California law permits parties to bind themselves to a contract

6  even if they anticipate that certain aspects of the deal will be reduced to a further

7  writing thereafter. *Facebook, Inc.*, 640 F.3d at 1038. California law allows parties to

8  delegate choices over terms, so long as the delegation is constrained by the rest of

9  the contract and subject to the implied covenant of good faith and fair dealing. *Id.*

10  (citations omitted). As long as the terms of a settlement are sufficiently definite for a

11  court to determine the parameters of the agreement, to determine whether a breach

12  has occurred, and to order remedies as a result of that breach, the agreement is

13  binding. *Greenwood Motor Lines, Inc. v. River Enterprise*, Case No. ED CV 15-

14  0566 SJO (JPRx), 2017 WL 11647645, at *3 (C.D. Cal. May 8, 2017) (citing

15  *Facebook, Inc.*, 640 F.3d at 1038).

16  **B. The parties reached a complete settlement on December 8, 2022, even**

17  **if a long-form settlement agreement had yet to be drafted**

18  As represented to the Court in the December 9, 2022 Notice of Settlement, the

19  parties, by and through their counsel of record, reached a complete settlement of this

20  matter and agreed upon the material terms of the settlement, which were to be further

21  memorialized in a long-form settlement agreement. ECF No. 259 at p. 2:13-15.

22  There can be no dispute that the parties' settlement was complete on December 8,

23  2022. *Id.* A long-form settlement agreement was not yet drafted, but this did not

24  make the material terms of the agreement any less binding. *Facebook, Inc.*, 640 F.3d

25  at 1038; *Blix Street Records, Inc.*, 191 Cal.App.4th at 48. The settling parties

26  authorized their respective counsel to settle the dispute, and such authorization is

27  manifested in a December 8, 2022 email exchange, where Mr. Chute, Ms. Adams,

28  and Mr. Orland, on behalf of their respective clients, confirmed the material terms of

14

1  the agreement. Goodman Decl., Exs. A-C (December 8, 2022 email exchanges).

2  Therefore, because there is a complete settlement and the parties authorized their

3  counsel to settle the dispute, this Court has the equitable power to summarily enforce

4  the parties' settlement agreement. *Callie*, 829 F.2d at 890; *see also* ECF No. 260

5  ("This Court retains full jurisdiction over this action . . . .")

**C. The parties objectively manifested agreement on all material terms of
the settlement in a December 8, 2022 email exchange, where they
agreed, through counsel, to mutually release each other (from all
known and unknown claims), with the sole exception of Preston
Rohner's outstanding judgment against Blackburne**

11  Since this Court has the equitable power to summarily enforce the parties'

12  settlement agreement, the next question is: what did they agree to? The only material

13  term at issue in this Motion is the mutual release. *See Inamed Corp. v. Kuzmak*, 275

14  F.Supp.2d 1100, 1124 (C.D. Cal. 2002) ("There is no doubt that release provisions

15  are generally thought to be material terms of any Settlement Agreement."). And the

16  objective manifestations of agreement to the mutual release are found in the

17  December 8, 2022 email exchange (Goodman Decl., Exs. A-C) and the

18  communications preceding it. Goodman Decl., ¶¶ 2-8; Novian Decl., ¶¶ 2-5.

19  Specifically, Mr. Goodman's December 8, 2022 email at 1:40 p.m. provides for:

20  "Mutual releases, with a carve-out for Mr. Rohner's judgment/accruing fees against

21  Mr. Blackburne/Blackburne & Sons in the Sacramento action (to be further

22  discussed as we iron out the specifics of a settlement agreement in this action)."

23  Goodman Decl., Ex. A. Defense counsel did not modify or question this language in

24  any way; they just confirmed it on behalf of their respective clients. Goodman Decl.,

25  Exs. A-C (December 8, 2022 email exchanges). At no point prior to receiving these

26  confirmations did any of the defense attorneys state that the releases would be

27  anything other than general mutual releases with a carve-out for Mr. Rohner's

28  judgment, nor was that Plaintiffs' counsel's understanding. Goodman Decl., ¶ 8;

Novian Decl., ¶ 5. Indeed, Mr. Chute never communicated, verbally or in writing, prior to confirming the mutual general releases in his December 8, 2022 email, that Blackburne was asking for any carve-out <u>at all</u>, nor would Plaintiffs have agreed to it. Goodman Decl., ¶ 10; Novian Decl., ¶ 7.

Although the first draft of the settlement agreement sent on December 20, 2022 incorrectly provided for a unilateral release that did not include a carve-out for Mr. Rohner's judgment, it did contain standard general release language that Plaintiffs' counsel has seen in California settlement agreements throughout the course of their careers, including the California Civil Code 1542 waiver[17]. Goodman Decl., ¶ 9, Ex. D (draft settlement agreement, section 4); Novian Decl., ¶ 6. The Court should view this draft of the long-form agreement as evidence <u>supporting</u> the notion that a general release of all known and unknown claims (with a California Civil Code 1542 waiver) was contemplated and agreed upon. In addition, this draft (and the subsequently amended draft contained in Goodman Decl., Ex. E) provides the Court with sufficiently definite terms to enforce the mutual release, when read in conjunction with the parties' communications between December 2, 2022 and December 8, 2022. Whether Blackburne had a subjective intent to specifically exclude the Sacramento action from the mutual release, or make the release unilateral, was neither expressed prior to the final agreement on December 8, 2022, nor is it relevant other than perhaps to exemplify why court intervention is necessary.

### D. Blackburne is in breach of the parties' settlement due to his refusal to release Plaintiffs from any claims

Contrary to the parties' express agreement on December 8, 2022 for <u>mutual</u> releases, Blackburne does not seem to want to let go of any claims. Mr. Chute

---

[17] The Legislature intended California Civil Code section 1542 to preclude the application of a general release to unknown claims in the absence of a showing, apart from the words of the release, of an intent to include such claims. *Casey v. Proctor*, 59 Cal.2d 97, 109 (Cal. 1963). This statutory limitation on general releases is not absolute, however; litigants are permitted to relinquish or waive the protections of Civil Code section 1542 and release unknown claims. *Id.*

attempted to wriggle out of the general mutual release by claiming, after receiving revisions to his draft of the long-form agreement, that the settlement "specifically did not include the Sacramento Superior Court action[.]" Goodman Decl., Ex. E (David Chute email from January 10, 2023 email at 11:56 a.m.). Mr. Blackburne implied that he still intended to pursue Mr. Abrams in the Sacramento action by sending a cryptic email with a "Ready for Trial" attachment. Goodman Decl., Ex. F. Indeed, the docket in the Sacramento action does not show that Mr. Abrams or Mr. DeBenedetto have been dismissed. *See* Goodman Decl., Ex. M. Mr. Blackburne went a step further on February 16, 2023 and threatened to file another appeal in the Sacramento action. *See* Goodman Decl., Ex. H. Moreover, he attempted to use the threat of another appeal as leverage to get Mr. Rohner to walk away from enforcing his judgment. *See id.* Blackburne is holding onto anything to avoid paying Mr. Rohner's judgment, but the problem is Blackburne already released his claims. Based on Mr. Blackburne's own improper statements[18], the Court can easily find that he is disregarding the general mutual release and will continue to do so unless ordered otherwise.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Enforce Settlement Agreement should be granted. Specifically, the Court should find that Plaintiffs are entitled to specific performance of the following: (1) Blackburne must execute a long-form settlement agreement containing the (confidential) material terms agreed upon on December 8, 2022 (Goodman Decl., Exs. A-C) within ten (10) days of the signing of an Order; (2) the long-form settlement agreement must contain mutual general

---

[18] As a member of the California State Bar (George Blackburne III # 155132 - Attorney Licensee Search (ca.gov)) representing himself in his appeal (Third Appellate District Case No. C096770), Mr. Blackburne should know that he cannot communicate directly or indirectly "about the subject of the representation with a person* the lawyer knows* to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer." Cal. R. Prof. Conduct, rule 4.2(a). Mr. Blackburne does not have (and never has had) Plaintiffs' counsel's consent to communicate directly with Mr. Abrams.

releases in substantially the same form as in Mr. Goodman's January 9, 2023 draft (Goodman Decl., Ex. E); (3) Mr. Rohner's judgment (Goodman Decl., Ex. K) is the sole exception to the mutual general releases between the parties; (4) Blackburne must affirmatively dismiss Mr. Abrams and Mr. DeBenedetto from the Sacramento action as directed in the long-form settlement agreement; and (5) Blackburne must affirmatively dismiss the appeal of the Order granting Mr. Rohner's anti-SLAPP motion (Third Appellate District Case No. C096770) as directed in the long-form settlement agreement. In addition, the Court should award Plaintiffs damages in the amount of their reasonable attorneys' fees incurred in connection with the present Motion.

Dated:  April 17, 2023                    Respectfully submitted,

                                          NOVIAN & NOVIAN, LLP

                                          By: /s/ Andrew B. Goodman
                                          FARHAD NOVIAN
                                          ANDREW B. GOODMAN
                                          Attorneys for plaintiffs Gary Abrams, Jeffrey
                                          Aran, Stephen DeBenedetto, and Preston
                                          Rohner

1

## **L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

2

Pursuant to L.R. 11-6.2, the undersigned counsel of record for Plaintiffs,

3

certifies that this brief contains 6,238 words, which complies with the word limit of

4

L.R. 11-6.1.

5

6

7

Dated:  April 17, 2023                    Respectfully submitted,

8

NOVIAN & NOVIAN, LLP

9

By: /s/ Andrew B. Goodman
FARHAD NOVIAN
ANDREW B. GOODMAN

10

Attorneys for plaintiffs Gary Abrams, Jeffrey

11

Aran, Stephen DeBenedetto, and Preston
Rohner

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>CERTIFICATE OF SERVICE</u>

I certify that all counsel of record who are deemed to have consented to electronic service are being served with a true and correct copy of the above document on April 17, 2023 via the Court's CM/ECF system. Any other parties or counsel of record will be served by regular and/or electronic mail.

/s/ Andrew B. Goodman
Andrew B. Goodman

PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT